Number 21-537. Beasley Kiernan? Are you there, Beasley Kiernan? I am here, but I believe Ms. Gibson will go first. Yes, of course. Yes, Ms. Gibson, who has reserved three minutes. You're on mute. You're on mute. I'm sorry. May it please the court, Sujata Gibson for the appellants. I do reserve, with the court's permission, three minutes for rebuttal. Thank you. Thank you, counsel. Comes now eight medically fragile children who are disabled and who represent a proposed class action of hundreds, if not thousands of other children, just like them across the state, who have medical exemptions written by their treating physicians, state licensed physicians that were denied by school districts on the basis of an overly restrictive standard of cares criteria set forth by the Department of Health, which contradicts the state statute. The state statute provides that if any physician licensed in the state certifies that a child might be at risk of harm for one or more of the vaccines, they should be exempt. However, the Department of Health in 2019 promulgated regulations that narrow that. Are you suggesting that if the child's physician says so, that's the end of it, that that judgment can't be examined, rejected by a school? I am, well, I believe Dovie Bolton does set forth that standard for evaluating medical exemptions and does say that the state, once it's a state licensed physician that has made that determination, that the state can not interfere further by subjecting it to third party review or by state review. And that's also affirmed in the Whalen case. Suppose, I mean, suppose the physician is wrong. There are several. For whatever reason, for whatever reason, I mean, as I understand it, your position is that on the physicians say so, that's the end of the story. Well, your honor, I would say that this is a rule eight motion. So if there was some compelling need, if there was some huge problem of physicians being wrong on a massive scale to the point where we needed to start overrule precedent and start interfering in this doctor patient relationship and the fundamental rates associated, that could certainly be addressed at a trial to look at that. But that hasn't been alleged here. And it's not before us. However, there are other options if the state were to be concerned, say a doctor was writing, you know, 100 medical exemptions and they didn't, they didn't, they thought this doctor was going outside of the standards of the medical profession. Well, the state already has those reports of what doctors are writing what medical exemptions, and they already have their own disciplinary options they can bring that doctor forward and have them, you know, justify their practice and their license in separate proceedings, they can already do that. But it's really what is unreasonable, even under a rational basis review is to allow school principals who have absolutely no medical training to substitute their judgment for doctors, the risk here. What about I'll turn that around. What if the school is wrong. What if the school gets it wrong, which is a very there, can't you, you can challenge that under state law right you can bring procedures on the state law to challenge the the denial of a request for a medical exemption. Well, you can make those you can make those those those very arguments, the school got it wrong and rejecting. Your Honor, I would push back on that for two reasons. Number one, most children do not have $30,000 $40,000 to challenge each time that a school principal gets it wrong, school principals don't have any basis making medical decisions or substituting their judgment for these families who are the ones in the position to evaluate different medical opinions, they know their children. These are medically fragile children with serious, serious conditions, whose licensed providers have certified that they're And what our problem with this is, is that the ACIP best practices guidelines are wholly insufficient or what about the or what about the or other language other national nationally recognized standard as pointed out in our reply brief, it was, and in our principal brief is inappropriate for the district court to interpret that outside of how our complaint says the state is applying that the state even admitted an oral argument that they're applying that very narrowly that is also just applying other best practices guidelines from two other organizations, which they admit are substantially the same as the ACIP guidelines, and which do not cover hundreds of conditions that are compensated by the US government routinely as acknowledged vaccine injuries that are in the manufacturers FDA required package inserts as known risk factors, and that are identified by the Institutes of Medicine reports. So we know that best practices guidelines are not sufficient. In fact, the CDC, and this is in the complaint, even wrote to one of our plaintiffs the, the author of these guidelines, who is the CDC representative wrote to one of our plaintiffs and said, these cannot define these cannot safely define the medical exemption it's up to a provider to decide if it needs to be brought in and they have to be able to look at family history. They have to be able to look at the child's individual chart, and a school principal is not going to be able to understand this sufficiently to be able to to go in there and say oh this doctor is wrong based on a school form. First of all, what doctor can write a 50 page dissertation to educate a school principal about all the reasons why this particular child is at risk of harm. I mean, and I would say that, but, you know, if you look at Rodriguez or some of the other cases in the medical malpractice cases, standard of care is a factual issue not a legal issue to be determined by fact finders and so you have the court aired by giving this inference to the defendant, it was a serious error to suggest that the other evidence based standard of care somehow expands this meaningfully beyond a set was Gibson. The district court acted under Rule 12 be six. And what would you care to get from us what is the decree. What is the relief that you seek from us here today. Does similarly to vacate the decision and remand for fact finding, unless it is so clear on the, on the face of it which I think it could be this, this law is quite clear from Dovey Jacobson itself to Dovey Bolton to whale and V ro tie to Iota to all the decision making is that if a doctor a light state licensed doctor has made this decision that should be enough for the state and they've decided that even in the case where giving an exemption means that a viable child will definitely die. So that's, you know, that's even in the abortion contest it's even stronger because you know this they already women are protected pre viability with their abortion right but post viability. That's when the medical exemption cases come in, and in that case, allowing that exemption to go forward means a viable child will definitely die so in this case, we don't even have such stark circumstances there's nothing to suggest, why isn't that. Why isn't that a reason to distinguish the abortion cases because the circumstances there involve someone's life. It's a life threatening situation. Here, the child, and they say, even then, that death is allowed to occur because if a woman's health is at all impacted and the, and the doctor gets deference, and the doctor gets to decide based on any factor they deem relevant, including psychological familial age. And here we have a situation where if a doctor if an exemption is granted the likelihood that the half of 1% of children with a medical exemption will even catch one of these viruses childhood viruses leave aside pass it on to another person, leave aside pass it on to someone who's actually vulnerable and might even get sick or die is so minuscule that it's meaningfully zero. Well in this remand this period of remand that you were asking of us. Presumably you would wish to have discovery you've had you have not had any discovery yet is that right. Correct. Yours is a facial challenge. And as applied. Right. So, if we remand what is it that would happen in the district court upon remand in your view. Well, I. What do you want there. You presumably would want discovery of some kind, right. Your Honor and the state would have to prove that there was such a compelling need to override these fundamental rights that they have to. They have to deviate from the Supreme Court's decision and Dovey Bolton which has been applied to all medical decision making by whaling the row. Right. Well thank you reserve some time and we're here now from Beasley. May it please the court Beasley cannon for the New York State defendants over 100 years ago in Jacobson Supreme Court upheld mandatory vaccination, and the court explained when a medical exemption should be available. When it can be shown with reasonable certainty that a vaccine may result in harm to a specific individual. The regulation challenged here conforms with that precedent. It provides a medical exemption to New York school immunity immunization requirement. So long as it's based on evidence and consistent with national standards, because a medical exemption remains available to those who can establish a genuine need for one. The regulation does not burden any fundamental rights. It is report therefore correctly applied rational basis review and properly upheld the regulation as a reasonable public health measure. Now plaintiffs interpret this regulation narrowly. They argue that physicians are limited to the four corners of the AC IP guidelines, but the regulation is more flexible than that, even on its face. It allows a physician to certify a medical exemption based either on AC IP guidance or any other evidence based nationally recognized standard of care. And that catch all phrase allows physicians to exercise their independent clinical judgment. So long as that judgment is based on the evidence. Are there other such standards national standards that are evidence based, or is that is that a factual question that needs needs fact finding. It is a factual question in that plaintiffs do not allege that there's any condition that should be on the AC IP guy, but is not on the AC IP guidance, their claim is that these children have a constellation of conditions, and they're at special risk from a vaccine. That is a necessarily fact bakes question, but these vaccines are safe, and they're effective, they've been administered hundreds of millions of times, and in a very small percentage of those cases, people do experience severe adverse reactions. If those reactions are noble in advance. These, these, these doctors in these cases are saying no. They're not safe for these children. And why, why are their opinions being rejected. It's a little hard to tell from the record. It is hard to tell from the rate they're being rejected because they're not on the AC IP list, or, or what planets do allege that in a couple cases, physicians for the school districts have said that the conditions don't appear on the AC IP list. In other cases, for example in john does case, it went up to the Commissioner of Education, and the commissioner upheld the denial of the medical exemption, because the position did not point to any contraindication or precaution. In a lot of these cases, plaintiffs alleged that they have certain conditions, and they also alleged that they have certifications from physicians, but the ipsy deceit of a physician is just not enough, it has to be based on evidence and it has to be consistent with the standard of care. And there's nothing unusual about that requirement under state law, and under constitutional law, we side Rodriguez in our in our brief plaintiff side another case, a par on the Jr. And in both those cases, the courts held that treating physicians can permit individuals to be committed, their judgment is to be respected but it has to be based on are consistent with national medical standards. And that's all this requirement does as well. What is the role in the analysis of this question of the, of the, of the importance of the state's interest in preventing outbreaks of communicable diseases in the schools. Well, that's one reason why the abortion cases are in opposite, because the state does have a compelling interest in maintaining herd immunity and making sure that as many people as possible are vaccinated, whereas in the abortion context and abortion only affects the pregnant woman and also the fetus. And it also shows your honor's point also shows why the regulation passes rational basis review easily. Well, I wasn't making making a point I was asking a question that, that, if one concludes that the state has a compelling interest. How does that, how does the compelling interest. I understand how it how it figures in on rational basis review, but if it's other than rational basis if for example it's, it's a more stringent standard. How does the state's interest figure in to the analysis. If heightened scrutiny does apply plaintiffs claim against the state is facial so they have to show that the regulation is unconstitutional in all cases or in substantially all cases, they can't they can't show that. But even if they were able and say and as applied challenge to show that in a certain case, an individual is genuinely at risk of harm from a vaccine and can show with evidence under our interpretation of the regulation that individual should receive a medical exemption under the regulation. If hypothetically, that person were not able to receive a medical exemption, you can seek review in state court as as your honest judge noted, you can also bring review to the Commissioner of Education. In this case does not present the more difficult question about whether the state's compelling interest in vaccination. Permits the state to require vaccination, even for someone who is genuinely at risk of harm, because the regulation permits that person to receive a medical exemption. Mr. Am I right to understand this record to exclude the possibility of providing online education to students who have not received immunizations. That's correct, Your Honor. So in other words, you're not, you're not simply excluding them from the classroom. You're excluding them from any kind of education is that right. From any form the regulation 10 and why CRR 66 dash 1.1 defines children who are enrolled or attending school, and it would cover folks who are in remote education. And what's the basis for that. Speaking of evidence based science. Well, New York school immunization requirement, it protects school children, but it's also the mechanism by which the state promotes herd immunity in the population at large. These are school children right now, but they'll grow up to be adults, and their immunity. Once acquired in childhood will protect the community at large when they grow up to be to be an adult. So there's a compelling interest here, both in protecting school children, and in promoting herd immunity in the population at large. Now you give fairly short shrift to the Rehabilitation Act claims. It seems to me that if plaintiffs are being excluded from school solely by reason of their disabilities. This seems to state a Rehabilitation Act claim that seem reasonable to you as a general proposition. Yes. But in this case, the record does or plaintiffs do not allege that these children are excluded solely because of their, of their disability. If they're truly disabled. If they have a genuine medical reason not to be vaccinated, then at least under the regulation, they should receive a medical exemption. So to the extent the Rehabilitation Act claims are against the state, they fail because those children if they are disabled should receive a medical exemption. Well, it seems to me that the, that the answer to this proposition for these, in this case is that these children are not being excluded in any respect because of their disability. The exclusion applies whether they have a disability or not. And they are, they are perhaps being excluded in spite of their disability but not because of it. The regulation doesn't, the regulation doesn't exclude somebody from schooling, because they have a disability, it excludes them because they don't have a vaccination. That's right. They don't have a vaccination, and they don't have a legitimate medical reason not to be vaccinated. Right. And again, if a child can show with reasonable certainty that that she'll be at significant risk of harm from the vaccine, that child should receive a medical exemption under the regulation. Unless there are any further questions, I urge the current court to affirm the district court's judgment below dismissing the facial claims against the state defendants. All right, we'll hear from Adam Kleinberg. Good afternoon, Your Honor. I'm pleased the court, Adam Kleinberg, represent South Huntington School District, Ithaca City School District, Albany School District, and Three Village School District, and their individual officer, officials, excuse me. I'm not going to go over what the state just went over, I just want to touch upon a few things that I heard from appellant's counsel. As far as this perception that the school principals shouldn't be overriding the decisions of an individual family's doctor, that's not what's happened. The principals have worked in connection with district's own medical officials, and even the Department of Health, as some of the plaintiffs have learned. And just as Judge Chin had indicated, this is not a situation where as soon as you get a doctor's note, that's it. Inquiry has to end. We can't make sure that we're complying with the law. It's not a law we set as individual school districts, it's a law that the state set, but we do have an obligation to make sure we're complying. These specifics were reviewed by this court, the Second Circuit, in response to the denial of the appellant's preliminary injunction. So all of those records went before the court. We had the affidavits from the families, we had the affidavits from the school medical officials, the affidavits from the state, and not only the district court denied a preliminary injunction, but the Second Circuit did, and the Supreme Court denied certiorari on that. As far as the reference to abortion cases, abortion cases do not allow this case to somehow assert a fundamental right that would impose a strict scrutiny review. So with the rational basis test that was properly employed by the district court, there was nothing here that would allow an inference that any plaintiff suffered a constitutional violation and the dismissal was appropriate. As far as the reference that, well, not everyone has $30,000 or $40,000 to bring a lawsuit, I believe that appellant's counsel said that, excuse me, to bring it under state court. As Judge Chin indicated, there are administrative, you know, you could file an Article 78 petition, but you could file with the Commissioner of Education, which is exactly what one of these families did, and the Commissioner of Education upheld the individual school district's determination. So, you know, here, the districts that I represent, the school officials that I represent, were applying the law, and now this is an overreaching attempt to establish a class action because the appellants and their counsel want to establish a new rule that says, it doesn't matter what the CDC guidelines say, it doesn't matter what New York State says, but if we get a doctor's note that says we don't get a vaccine, nobody can question it. Well, I don't think that's appropriate, but more importantly, I don't think it's a constitutional violation, which should take it out of the realm of this federal court. Thank you very much. Thank you. Ms. Taggi. Is Ms. Taggi with us? For the Coxsackie School District? Having trouble hearing you? Hello? Can you hear me now? Yes. Okay. Now we can. Okay, great. There you are. Good afternoon, your honors, and may it please the court, Roxanne Tastian of Collin and Dyckman LLP for appellees, Coxsackie-Athens Central School District, Lansing Central School District, Penfield Central School District, and their respective administrators. Having heard the arguments set forth by Mr. Kleinberg and Mr. Kiernan this afternoon, appellees are in agreement with the arguments set forth and join in them, and we are prepared to rest and submit our papers at this time. Thank you, Ms. Taggi. And Mason Rickard-Dooley, who I believe has submitted. Yes, your honor, we're submitting. We did not request for an argument. We're submitting. It's on submission. Okay. Fine. Ms. Gibson, you've reserved some time. Yes, your honor. I'll remind. I'll bring up that these are constitutional and federal claims. This is the Rehabilitation Act, and these are four fundamental rights, at minimum, that we've alleged have been violated. And so under… What authority is there that this is a fundamental right, you know, subject to the heightened scrutiny? Sure. There is a fundamental right to refuse medical treatment, particularly I would suggest a fundamental right to refuse medical treatment that one's doctor says can kill or harm you. There is a fundamental right of parents to make medical decisions for their children. There is a fundamental right of privacy. There is a fundamental right to life itself and to protect one's life, which Jacobson v. Massachusetts, even though that case was decided in 1905, far before tiers of scrutiny were even invented, Jacobson singled out the medical exemption and said, if somebody is, by nature of their condition, at risk of… The state is not compelling anybody to be vaccinated. And that is where I would bring in the unconstitutional conditions doctrine. It is very well settled law that you cannot condition a benefit, whether it's fundamental right to go to school or not, which we do not necessarily concede, but it's really irrelevant to this case. You can't condition this benefit on waiver of your fundamental right to make medical decisions in accordance with your doctor about what's going to harm or kill you. And I will say that all of Appellee's arguments center around factual disputes. It is not… We are asserting that each of these children is at risk of serious timely death. In fact, multiple specialists have said the same thing. With respect to unconstitutional conditions, the AID case in the Supreme Court analyzed the issue in a manner that's not favorable to your argument, because it drew the distinction between the condition being one that is pertinent to and a part of the program, as opposed to something that is external, where the governmental entity was requiring a statement of standard of opposition. Which was not part of the program being administered, but the decision was to the effect that the state may require, may shape the program itself by demanding conformity to a condition that's necessary to effectuate the goals of the program. With all due respect, Your Honor, I would point out that the CDC said it was part of the program and the court did not afford deference to that decision. It's not part of the program to protect children by imposing a condition that is by nature going to harm children. We did allege that there are hundreds of conditions that the U.S. government recognizes are not as vaccine risks that are not in this ACIP guidelines. And we did allege that they do not follow the ACIP guidelines. And just in closing, disparate impact. Also, you cannot get constitutional violations reviewed by the Commissioner of Education or in the article 78, nor rehabilitation claims and disparate impact is another feature of Rehabilitation Act discrimination and here we have a disparate impact on children whose conditions fall outside of these narrow two conditions that are recognized in ACIP, which is he says to not be used as a medical exemption criteria. Well, let me ask you, if you were designing on behalf of the state a standard to ensure that medical exemptions would only be allowed where they were warranted, how would you design that? If you were wanted to guard against the risk that any individual physician might give might might be willing to sign a letter on behalf of that person's patient, granting them an access to to the schools, where there was not a genuine risk of harm, how would you protect the populace against that risk? I would do exactly what the New York State Legislature has done here and pass public health law 2164, which says if any physician licensed by the state certifies the child is at risk, the child is exempt. My question was, if you wanted to, if you've considered it necessary and important to avoid the risk of having any individual physician, simply by virtue of being a physician, being able to to grant a child access to the schools, where it was not necessarily warranted, how would you design the standard in order to achieve that? State physicians, state licensed physicians are already regulated by the state. They already have the ability to do that outside of this process. And so that's why the Supreme Court said that should be enough. How do you protect against unscrupulous licensed physicians who don't believe in vaccines and are willing to sign a letter? To answer Judge Lavalle's question, if you decide we need something, something objective, what would you do? The state regulation of physicians, you have it already. That's why the Supreme Court in Doe v. Bolton said that's enough. If you have to rest on this, we have made these people officials of the state in terms of the health policy. We say they're qualified to make these decisions. And the state has not alleged, and this cannot be alleged in a motion to dismiss, that there is some widespread problem with physicians across the state. Your position is if they are licensed, that's the end of the story. If they say so, that's it. If they are licensed. And that there's other ways of dealing with it if there's a problem. If there's a physician that's not acting within their ethical responsibilities, they have a whole disciplinary process. How do you determine there's a problem if you don't have some kind of a standard? They already get the reports of how many each person writes. And so if they see that somebody is writing a lot, they can always look at them and say, is this justified by the science? So you're saying there's no protection except against widespread problems. If there's one physician who's writing hundreds of them, then you can protect against it. But if it's a physician who's only writing two or three or six completely unjustified exemptions, the state has no way of preventing that. I guess what the Supreme Court felt, and I agree with, is that there's the tradeoff here of disabled and children who are disabled and at serious risk of harm being harmed versus the state's interest in making sure not even one person erroneously gets an exemption, which can't affect herd immunity. Herd immunity, the state says, has to be at 80 to 95%. Half of 1% of children even have a physician who is willing to write an exemption. Herd immunity is not the only objective. The objective is also to prevent the spread of communicable diseases. That is herd immunity. So you can't, the whole concept of herd immunity is if enough people are- I'm sorry, I'm sorry. The word prevent, perhaps I was exaggerating, to prevent individual instances of the spread of communicable diseases. The state doesn't want people catching these diseases. It is seeking to avoid having the diseases be caught. And how does it do that except in cases under your analysis, except in cases where the abuse is on a gigantic scale? And in this situation, what we're saying is that the Supreme Court has really protected the relationship between the doctor and their patient and between parents and the doctors because the state is not qualified and school principals are not qualified to protect these children over the advice of their treating physicians. Elizabeth Rausch-Fung from the DOH has never seen or met these children. She's not examined their full records. These random people that they consult with have never seen these children. The only people who are equipped to safeguard these children are their parents, and that's a fundamental right. Do I understand that there are decisions being made, in your view, by public school principals without the benefit of medical consultation? Are these decisions in fact being made? Is that part of the allegation here? Yes, Your Honor. In the case of the Code children, where two children in that family died from acknowledged vaccine deaths and went through the vaccine injury compensation program and proved their case, they have genetic susceptibilities that are well established as putting them at risk of the same situation. And Elizabeth Rausch-Fung wrote that she didn't have enough information to say that their genetic susceptibilities were enough and they should seek, you know, a consultation with another genetic specialist to satisfy her. And we wrote to the court, their lawyers wrote to the court. She was not operating on the basis of consultation with a medical profession. No, but what I'm saying is that when the attorneys wrote to the school and said, that's within the other evidence-based standards of care and you can't deny these children, the school wrote back and said, they're not relying on Elizabeth Rausch-Fung's recommendation, and they're just independently denying these children for their own, for whatever reason they want. And that's fine. That's authorized under statute. They being? The school principals. The two school principals for the children were, and that's in the record and in the allegation that they just decided independently to deny them and there's nothing else you can do. They don't even have to give a reason. Okay. Well, thank you very much, Ms. Gibson. We appreciate your extra time and unless you have something that you think is terribly important for us to know that you haven't conveyed to us, we'll reserve decision and we will adjourn. Can I just leave with a question of what is going to happen to these children who have been excluded from school now for almost three years if they cannot access any private or public school or even online school? Is that the appropriate remedy for the state's unproven allegation that doctors may be writing erroneous medical exemptions? Thank you very much. We'll reserve decision and we are adjourned. Thank you. Questions adjourned. Thank you.